### LEHMANN v. CITY OF BROOKLYN.

(Supreme Court, Appellate Division, Second Department. May 7, 1898.)

1. MUNICIPAL CORPORATIONS—DEFECTIVE STREETS.

For a method of street construction which, under the natural and ordinary action of the elements, will render street travel dangerous, a municipality is as justly subject to liability when the dangerous condition arises as if it had actually created the dangerous condition in the first instance, without the intervention of the weather.

2. SAME.

Where a dangerous hole is permitted by the municipal authorities to exist in a public street, the mere fact that snow lying on the street combines with it to cause an accident, in which the wheel of a vehicle sinks into the hole, does not relieve the city of liability, if, in the absence of the hole, the accident would not have happened.

Appeal from trial term, Kings county.

Action by Anna M. Lehmann, as administratrix of Joseph Lehmann, deceased, against the city of Brooklyn. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Almet F. Jenks, Asst. Corp. Counsel, for appellant.
Samuel S. Whitehouse, for respondent.

WILLARD BARTLETT, J. This action belongs to the numerous class of cases in which municipal corporations have been held to be chargeable with negligence for failing to take care to maintain their streets in a fairly safe condition for the use of travelers. The plaintiff's intestate drove a brewery wagon into a hole on Barbey street, near the Eastern Parkway, in Brooklyn, and was thrown from the wagon, and killed. The accident occurred on a winter morning, when the ground was so deeply covered with snow as to conceal the hole from the observation of the driver. It is difficult to gather from the evidence a very precise idea of the character of the depression in the roadway, which the witnesses call a hole, and into which one of the wheels of the brewery wagon suddenly sank up to the hub, causing the overthrow of the vehicle and its load. Enough appears, however, to indicate that this depression was about two feet deep at the time of the accident, and that it owed its existence to the action of the surface water on the roadway, flowing towards a sewer basin placed

in the street by the department of city works. The earth would wash away here from time to time, and would be replaced by the employés of the department. But the jury probably inferred that such repairs had not been very recent, and that a dangerous hole had been there long enough to charge the city with notice of its presence, from the testimony of a witness living in the immediate vicinity, who swore that the very condition which existed on the day of the accident had existed for about six weeks previously.

· Barbey street at this point was not paved, but was what is commonly known as a "dirt road," in a sparsely inhabited portion of the city. It is true, as the learned counsel for the appellant contends, that a municipality is not held to so strict a responsibility for the condition of such a street as it would be in the case of a street in a thickly-settled neighborhood. But the trial judge gave the defendant the full benefit of this distinction. "It must be obvious," he said to the jury, "that where highways are built in a new country, leading perhaps to fords or ferries, where the conquest of nature has but begun, there is not the same obligation imposed as towards highways in older sections of the country. In mountain districts, where few live, the same degree of care is not observed or required in regard to roads and highways; and you may consider, if you see fit, in estimating the degree of care and vigilance that the city owed, that this was a sparsely-settled neighborhood, and not in the heart and much-traveled part of the city." This instruction fairly embodied the rule laid down in Glasier v. Town of Hebron, 131 N. Y. 447, 30 N. E. 239; and the record indicates that it was satisfactory to the counsel who represented the city on the trial, as he requested no further or different charge on the subject.

It is said that the so-called "hole" was not made by the city or by a third person, but was the natural result of the action of the elements upon the land that lay within the street lines. But the effect of the rain in producing the depression was induced by the particular manner in which the sewer basin was constructed, and the situation in which it was placed, or, at least, so the jury were authorized to find; and for a method of street construction which, under the natural and ordinary action of the elements, will render street travel dangerous, a municipality is as justly subject to liability when the dangerous condition arises as if it had actually created the dangerous condition in the first instance, without the intervention of the weather.

Before the brewery wagon reached the depression which tipped it over, the wheels slid several feet over the snowy surface of the street; and it is therefore argued that the accident was wholly attributable to the snow, for the presence of which the city is not responsible. As to this point, however, the most that can fairly be said is that the slippery surface formed by the snow combined with the hole in the highway to produce the injury; and under such circumstances the municipality is liable, inasmuch as the accident would not have occurred in the absence of the hole, no matter how far the wagon wheels might have slid over the snow. Taylor v. City of Yonkers, 105 N. Y. 202, 208, 11 N. E. 642. Whatever action the snow may have had as a concurrent cause, it is clear that the plaintiff's intestate would not have

been killed if there had been no depression in the street deep enough to upset the wagon. As has already been shown, there was evidence that this depression had been there sufficiently long to charge the city with notice, and the jury were fully justified in finding that it constituted a culpable defect in the highway. The case was correctly and most fairly tried, and the record discloses no error which requires or would warrant a reversal.

The judgment should be affirmed. All concur.